| United States District Court | Southern District of Texas |
|---|---|

| | | |
|---|---|---|
| David Murillo and Silvia Mencias, | § § § | |
| Plaintiffs, | § § | |
| versus | § § | Civil Action H-11-2373 |
| Roberto Micheletti Bain, | § § | |
| Defendant. | § § | |

## Opinion on Motion to Dismiss

1.  *Introduction.*

A Honduran man was killed during a political rally in Tegucigalpa. The man's parents say the Honduran army shot their son and the Honduran president is individually responsible. The president says he was not served properly, the court does not have jurisdiction, and the family has not stated a claim. The case will be dismissed.

2.  *Background.*

From 2006 to 2009, Manuel Zelaya was the president of Honduras. In June of 2009, Zelaya was exiled to Costa Rica by the Honduran army after the Supreme Court of Honduras issued a warrant for his arrest. Roberto Micheletti Bain assumed the presidency. Before, during, and after Micheletti's presidency, Honduras was a violent place.

On July 5, 2009, Zelaya attempted to return to Honduras in an airplane. At the capital airport, crowds gathered – including Isis Obed Murillo – to show support. Murillo's family says the Honduran army blocked the runway with army vehicles and shot into the crowd of demonstrators, killing Murillo. After the shooting, the family says they were harassed by the government.

Under the Torture Victim Protection Act, they sued Micheletti for extrajudicially killing their son. They also sued him for crimes against humanity – (1) widespread murder, (2) the targeted killing of their son, (3) persecution, and (4) inhumane acts. Next, they say he violated "customary international law" by denying Murillo life, liberty, and security of person.

Under Texas law, the family says he is liable for wrongful death, intentional infliction of emotional distress, and negligence. Micheletti moved to dismiss because the Alien Tort Statute does not apply extraterritorially, he was not served, the court does not have personal jurisdiction, and the family has not stated a claim.

3.  *Claim.*

Using the Alien Tort Statute, Torture Victim Protection Act, international law, and Texas law, Murillo has nine or more legal theories. The theories represent nine ways of asking the same question: Is the president individually responsible when the army shoots a civilian protestor and later harasses his family?

Honduras is a less-developed country of approximately eight million people.[1] It is the second poorest country in Latin America.[2] The Department of State warns American travelers that crime is widespread in Honduras. The Peace Corps suspended its program there because of concerns about safety. It is not clear how the family knows Murillo was killed by the Honduran army. He may have died from stray gunfire at a violent rally. Although the court credits the face of the complaint, this is mentioned because it colors the pleadings.

Micheletti did not order Murillo killed. He was not at the airport on the day of the shooting or present when troops harassed Murillo's family. The family says he is liable because he was the commander of the Honduran army. Some courts have said a commander's actual knowledge of the crime is irrelevant if he should have known.[3] If attenuated theories of causation are tolerated, they must be supported by facts.

The family has pleaded only conclusions about Micheletti's role in commanding the army. They have not said he knew of the airport rally or that troops would block the runway. The complaint does not say how often commanders reported to him. The shooting is not linked in kind or degree to other killings. It is not clear he should have known of the army's propensity for shooting protestors. Given Honduras's troubles with violence, it also does not say what he could have done about their predispositions if he did. Murillo's claims will be

---

[1] International Monetary Fund, World Economic Outlook (April 2012).

[2] United States Department of State, Consular Affairs, Honduras Country Specific Information, *available at* http://travel.state.gov/travel/cis_pa_tw/cis/cis_1135.html#safety.

[3] Chavez v. Carranza, 559 F.3d 486, 489 (6th Cir. 2009); Ford v. Garcia, 289 F.3d 1283, 1288 (11th Cir. 2002).

dismissed because they infer causation from chaos.[4]

Murillo's claims parallel Javaid Iqbal's case. Iqbal was arrested in the wake of September 11, 2001, along with other Arab Muslims. He sued the attorney general, saying he knew or should have known of the Federal Bureau of Investigation's discriminatory policies. The case was dismissed because he offered only conclusions, not facts, linking high-level government officials to discriminatory execution in the field.[5] Murillo has only conclusions to link Micheletti to the shooting.

4. *Personal Jurisdiction.*

Micheletti says the court does not have personal jurisdiction. Murillo must show that Micheletti has substantial connections to Texas and that Texas is a reasonable forum.[6] Without an evidentiary hearing, the family is afforded lenience in meeting this burden.[7] They must, however, identify facts that establish jurisdiction, not conclusions.

Because Micheletti's contacts with Texas are unrelated to the murder in Honduras, the court only has jurisdiction if his contacts are continuous and systematic.[8] Murillo identifies three Texas connections:

- An ownership interest in up to three Texas properties. Micheletti says he only owns one property in Texas. Murillo's family says he owns three.
- A Wells Fargo Bank account.
- Vacations in Texas and through Texas airports.

Vacationing in Texas is not a systematic connection.[9] Micheletti's bank accounts are not meaningfully in Texas; his money is represented by ones and zeros in a Wells Fargo

---

[4] Mamani v. Berzain, 654 F.3d 1148 (11th Cir. 2011).

[5] John D. Ashcroft, et al. v. Javaid Iqbal et al., 556 U.S. 662 (2009).

[6] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-77 (1985).

[7] Walk Haydel & Assoc. v. Coastal Power Prod. Co., 517 F.3d 235 (5th Cir. 2008).

[8] Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 415-16 (1984).

[9] Johnston v. Multidata Systems Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008).

computer accessible from anywhere in the world. He also never used the accounts regularly.[10] His Texas properties do not show systematic connections to Texas.[11] Micheletti has never lived or worked in Texas. He only admits to owning one Texas property, and swears to have visited the property only twice for an hour each time. Taken together, these connections are sporadic.

Even if Micheletti had continuous contacts, litigating this case in Texas offends ordered justice.[12] Texas is a bad forum because the Department of State has forbidden Micheletti from traveling to the United States. His inability to appear will prejudice his defense. Were he able to appear, it would still be burdensome to try the case in Texas. Everything happened in Honduras; all of the witnesses, documents, and laws are 1,200 miles away.

5.  *Service.*

Micheletti says he has not been served. Murillo says he served Micheletti in two ways: (1) mailing service to Honduras; (2) personally serving his domestic agents.

Service of a foreigner by mail is permissible unless the foreign country's law prohibits it.[13] Murillo cannot serve Micheletti by mail because Honduras requires personal service by a court-authorized person.

Some courts have interpreted the rules to allow service by mail unless the foreign country expressly prohibits it.[14] Murillo's family admits Honduran law requires personal service, but they say it does not expressly ban service by mail. By affirmatively requiring personal service, Honduras necessarily banned service by mail. If you must do X – an act mutually exclusive with Y – you must not do Y instead.

Murillo's family says the court should adopt this illogical outcome to avoid a redundant interpretation of the statute. It is not redundant because Rule 4(f)(2)(a) applies when a foreign

---

[10] Prima Vista S.P.R. de R.L. v. Banco Serfin, SA, Institucion de Banca Multiple Grupo Financiero Serfin, 974 S.W.2d 918, 926 (Tex. App. – El Paso 1998).

[11] Shaffer v. Heitner, 433 U.S. 186 (1977); Rush v. Savchuk, 444 U.S. 319 (1980).

[12] International Shoe Co. v. Washington, 326 U.S. 310 (1945).

[13] Fed. R. Civ. P. 4(f)(2)(c) (2006).

[14] Res. Ventures, Inc. v. Res. Mgmt. Intel, Inc., 42 F. Supp. 2d 423 (D. Del. 1999).

country has a rule requiring service. By contrast, Rule 4(f)(2)(c) specifies two routes to serve a defendant in a country without a rule on service. Rule 4(f)(2)(a) and (c) should be read in conjunction: both illustrate that foreign service should not offend foreign law.

The family personally served Jenny Vivas and two other people who do not know Micheletti, but reside in properties Micheletti may own. They say Vivas is a registered agent because Micheletti gave her a durable power of attorney to manage his rental property. Relying on the Texas probate code, they say giving someone a power of attorney makes that person your agent for service of process.[15]

Micheletti and Vivas contest the authenticity of the power of attorney in their affidavits.[16] At the motion to dismiss stage, the court credits the face of the complaint, but doubts the plausibility of his attempts to serve Micheletti.

The power of attorney given to Vivas explicitly limits its scope to the "specific purpose of the purchase and closing . . . a transaction on real estate described in Exhibit A."[17] She may have been an agent for Micheletti if a lawsuit arose out of the acquisition of property. By the document, her power is limited to that transaction.[18] A killing in Honduras is unrelated.

Last, the Durable Power of Attorney Act is in the Probate Code. It does not reach this dispute. It only becomes effective on the disability or incapacity of the principal.[19] Micheletti is not disabled or incapacitated. Texas has forms to appoint someone as your agent for service in civil cases; those forms are not the same process as executing a power of attorney to ensure your estate is handled competently.

6.   *Extraterritoriality.*

This case has nothing to do with the United States. The parents of a deceased Honduran are suing a Honduran politician, complaining about the Honduran army's behavior at a Honduran airport. American laws like the Alien Tort Statute and Torture Victim

---

[15] Tex. Prob. Code § 500 (2006).

[16] Roberto Micheletti Bain's Motion to Dismiss, Docket Entry 20, Exhibit A & B.

[17] Statutory Durable Power of Attorney, Page 2, Docket Entry 32-10.

[18] Hardy v. Robinson, 170 S.W.3d 777, 781 (Tex. App. – Waco 2005).

[19] Texas Probate Code § 482(3) (2006).

Protection Act are presumed not apply beyond the borders of the United States.[20]

7.  Conclusion.

Because this case is wholly unconnected to the United States, it is not surprising that service has proved difficult. The face of the complaint is also fraught with conclusions, not facts. The case will be dismissed.

Signed on April 19, 2013, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[20] Kiobel v. Royal Dutch Petroleum, No 10-1491, slip op. at 14 (Supreme Court April 17, 2013).